IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
JOHN HALEBIAN, Individually and on behalf of
all other similarly situated trust beneficiaries and        :
derivatively on behalf of CITIFUNDS TRUST III,
:
Plaintiff,
:

- against -
:

ELLIOTT J. BERV, DONALD M. CARLTON, A.    No. 06-cv-4099 (NRB)
BENTON COCANOUGHER, MARK T. FINN,        :
STEPHEN R. GROSS, DIANA R.
HARRINGTON, SUSAN B. KERLEY, ALAN G.     :
MERTEN, and R. RICHARDSON PETTIT,
:
Defendants,
:
- and -
:
CITIFUNDS TRUST III,
:
Nominal Defendant.

**REPLY MEMORANDUM
IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT**

*FILED ELECTRONICALLY*

# **TABLE OF CONTENTS**

                                                                                                                                              **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 1

I.      Claim I Must Be Dismissed. ....................................................................................... 1

           A.      The Board's Rejection of Plaintiff's Demand Was Not Untimely ........................ 1

           B.      Plaintiff Ignores the Requirements of Rule 23.1 ..................................................... 2

           C.      Plaintiff Is Not Entitled to Discovery ...................................................................... 3

II.     Claims II and III Must Be Dismissed ......................................................................... 5

           A.      Echo Voting Is Lawful, and the Proxy Statement Did Not Misrepresent or
                 Omit Any Material Facts Regarding Its Use .......................................................... 5

           B.      Plaintiff Cannot Refute that Claims II and III Are Derivative ............................... 7

           C.      A Private Right of Action Cannot Be Created By Regulation Where It Is
                 Not Created By Statute ............................................................................................. 8

           D.      Plaintiff Cannot Distinguish Controlling Second Circuit Precedent that
                 Requires Claims II and III to Comply With Rule 9(b) .......................................... 9

           E.      Plaintiff Cannot Distinguish Case Law that Makes Clear He Lacks
                 Standing to Assert Claims on Behalf of Shareholders of Funds in Which
                 He Does Not Own Shares ...................................................................................... 10

CONCLUSION ................................................................................................................... 10

REGULATORY ADDENDUM………………………………………………………… A-1

# TABLE OF AUTHORITIES

**CASES:**                                                                                                     **Page**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .......................................................................... 8, 9

*Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21 (D. Mass. 1996) ........................................... 8

*Fagin v. Gilmartin*, 432 F.3d 276 (3d Cir. 2005) ....................................................................... 4

*Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) ......................................................................... 5

*Gentile v. Rosette*, 906 A.2d 91 (Del. 2006) ............................................................................... 7

*Harhen v. Brown*, 730 N.E.2d 859 (Mass. 2000) ....................................................................... 4

*Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984) ........................................ 5

*In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005) ....................... 8

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982) .................................................................................. 5

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ............................................................. 8

*Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000) ......................................................................... 8

*Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002) ................................................... 8-9

*Rombach v. Chang*, 355 F.2d 164 (2d Cir. 2004) ...................................................................... 9

*Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005) ......................................................... 10

*Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991) ............................................................... 4, 5

*Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) ............................................................ 4

**STATUTES:**

Investment Company Act of 1940, *as amended*, § 20(a), 15 U.S.C. § 80a-20(a) ..................... 8, 9

Mass. Gen. Laws ch. 156D, § 7.42(2) ......................................................................................... 1
Mass. Gen. Laws ch. 156D, § 7.42 cmt. 3 .................................................................................. 1
Mass. Gen. Laws ch. 156D, § 7.43 ........................................................................................... 1, 2
Mass. Gen. Laws ch. 156D, § 7.44 .............................................................................................. 4
Mass. Gen. Laws ch. 156D, § 7.44(a) ......................................................................................... 1

**Page**

Mass. Gen. Laws ch. 156D, § 7.44(c) .................................................................................... 3
Mass. Gen. Laws ch. 156D, § 7.44(d) .................................................................................... 4
Mass. Gen. Laws ch. 156D, § 7.44 cmt. 2 .............................................................................. 4
Mass. Gen. Laws ch. 182, § 2B ........................................................................................ 2, 4

**RULES AND REGULATIONS:**

Fed. R. Civ. P. 4(d) ................................................................................................................ 1

Fed. R. Civ. P. 9(b) ................................................................................................................ 9

Fed. R. Civ. P. 12(a)(1)(B) ..................................................................................................... 1

Fed. R. Civ. P. 23.1 ....................................................................................................... 2, 3, 4

New York Stock Exchange R. 452 ..................................................................................... 6, 7

Defendants, CitiFunds Trust III and its Independent Trustees, submit this reply memorandum in further support of the Motion to Dismiss the Complaint (the "Motion").[1] As explained below, the various arguments set forth in Plaintiff's Memorandum in Opposition (the "Opposition" or "Opp.") lack any merit.

## ARGUMENT

### I.  Claim I Must Be Dismissed.

#### A.  The Board's Rejection of Plaintiff's Demand Was Not Untimely.

Plaintiff argues (Opp. at 9-11) that the Board's rejection of his demand was untimely because it came more than 90 days after the date demand was made. But nothing in Massachusetts law requires a corporation to act on a demand within 90 days. Mass. Gen. Laws ch. 156D, § 7.42(2) prohibits a "shareholder" from "*commenc[ing]* a derivative proceeding until . . . 90 days have elapsed from the date the demand was made." (Emphasis added.) By its terms, this restriction applies only to shareholders, and imposes no deadline on the corporation. As the official comment to the statute makes clear, far from being a limit, 90 days is considered to be a "reasonable *minimum* time[]" for a Board to complete its review of the demand, and "[i]n some instances a longer period may be required." *Id.* cmt. 3 (emphasis added).[2] Plaintiff does not and cannot cite to a single case supporting his contrary misreading of the statute's plain language.

Plaintiff also argues (Opp. at 9) that Mass. Gen. Laws ch. 156D, § 7.44(a), which codifies the business judgment rule in the context of derivative claims, does not apply here because it

---

[1]  Unless otherwise indicated, capitalized terms and abbreviations have the meanings specified in our opening Memorandum in Support of the Motion ("Opening Mem.").

[2]  When a plaintiff files a derivative action before the Board has completed its review, a court has discretion to stay the action until the investigation is complete. *Id.* § 7.43. Plaintiff (Opp. at 9) criticizes the Independent Trustees for not having sought such a stay, but obviously they could not have done so until Plaintiff filed this action, and by that point, there was no need. Plaintiff requested waiver of service under Fed. R. Civ. P. 4(d) on June 5, 2006. Defendants agreed to waive service, and accordingly had 60 days – or until August 5, 2006 – to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(B). The Court's subsequent scheduling order postponed Defendants' response until October 23, 2006. The Independent Trustees rejected the demand on July 12, 2006.

refers to "a derivative proceeding commenced after rejection of a demand," and his action was commenced before rejection. But it is not reasonable to construe the statute as eliminating the business judgment rule – a well-established rule of law long recognized in Massachusetts and many other jurisdictions – simply because a plaintiff files suit before the corporation finishes its investigation. Plaintiff's construction of the statute would subordinate all of the legal policy governing derivative actions to a plaintiff's calculated timing of the commencement of suit.[3]

### B.   Plaintiff Ignores the Requirements of Rule 23.1.

As we previously explained (Opening Mem. at 16-17), in a "demand refused" case, Rule 23.1 requires a plaintiff to plead with particularity facts showing (i) that a majority of the Board was not disinterested and/or (ii) that the Board failed to conduct a reasonable investigation into the demand, and Plaintiff has pled neither. In response, Plaintiff in his Opposition:

- never once so much as mentions Rule 23.1;

- does not dispute that, under Massachusetts law, a trustee must be deemed independent so long as the trustee is not an "interested person" under the ICA, *see* Mass. Gen. Laws ch. 182, § 2B;

- does not allege or argue that any of the Independent Trustees fails this test, and in particular does not (and cannot) allege any facts to show that any Independent Trustee had any financial or other interest in the transactions at issue in this case; and

- does not point to any allegations in the Complaint that suggest that the Independent Trustees failed to conduct a reasonable, good-faith investigation of his demand.

Instead, Plaintiff argues that it was impossible for the Independent Trustees to conduct a good faith investigation into their own activities (notwithstanding the fact that they retained independent outside counsel to assist in the investigation). This argument fails because, as explained in our Opening Memorandum (at 15), Massachusetts law expressly contemplates that a

---

[3]   Plaintiff's reading would also make § 7.43 a nullity. There would be no point to a corporation's seeking additional time to complete its inquiry if the business judgment rule only protected decisions made before a plaintiff filed suit.

2

board may investigate and respond to a plaintiff's demand, and that the directors are not deemed "interested" simply because their own actions are being challenged.  *See* Mass. Gen. Laws ch. 156D, § 7.44(c).  In effect, Plaintiff is attempting to make an argument that demand in this case was a futile gesture – notwithstanding that Massachusetts no longer recognizes the doctrine of demand futility.  Because Plaintiff has failed to plead specific facts that call into question the Trustees' independence and good faith, Rule 23.1 mandates dismissal of Claim I.

### C.    Plaintiff Is Not Entitled to Discovery.

Plaintiff argues (Opp. at 11-18) that the motion to dismiss his derivative claim should be treated as a motion for summary judgment and that he should be permitted to take discovery into the Independent Trustees' independence and the good faith and reasonableness of their investigation.[4]  Plaintiff has already received a considerable amount of *de facto* discovery, because he has the Demand Review Committee's Report and the Board's resolution, which describe in detail the Committee's investigation.  Indeed, the 49 exhibits to the Report include meeting minutes, documents reviewed by the Board in connection with its review of the new advisory contract, documents reviewed by the Demand Review Committee in the course of its investigation, questionnaires completed by each Independent Trustee with information about his or her independence, and a wealth of other materials extensively evidencing the thoroughness of the Demand Review Committee's and the Independent Trustees' consideration of Plaintiff's demand.  Plaintiff has failed to demonstrate that he fairly needs any further discovery.

A derivative plaintiff in a "demand refused" case is not entitled to any discovery unless he can plead with particularity sufficient facts to call the Board's exercise of business judgment

---

[4]   Plaintiff does not argue that any discovery is necessary with respect to the motion to dismiss Claims II and III. Nor could he, since the grounds for dismissal of those claims are unrelated to the Committee's Report and the Board's rejection of Plaintiff's demand.

3

into question, as required by Rule 23.1 and Massachusetts law. *Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991), is directly on point:

> At this time, the requested discovery will not be permitted. There is a presumption that a board's decision was the exercise of valid business judgment. . . . [B]ecause plaintiff's complaint fails to set forth facts leading to a reasonable inference that rebuts that presumption, her request for discovery should be denied. The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists.

772 F. Supp. at 800 (citations omitted). Massachusetts law is consistent with *Stoner*, permitting discovery only "for good cause shown." Mass. Gen. Laws ch. 156D, § 7.44(d). Good cause may exist if a plaintiff has pled facts sufficient to rebut the business judgment presumption, but there is no basis for discovery where plaintiff cannot even clear that initial hurdle. *See Harhen v. Brown*, 730 N.E.2d 859, 867 (Mass. 2000) (dismissing complaint in demand refused case without any discovery, where plaintiff failed to meet pleading requirements).

The cases that Plaintiff cites are not to the contrary. In *Fagin v. Gilmartin*, 432 F.3d 276 (3d Cir. 2005), the court refused to follow a decision of the New Jersey Supreme Court that made limited discovery *mandatory* in demand refused cases, holding instead that under the Federal Rules, the district court had discretion as to the extent of discovery. *Id.* at 285 & n.2.[5] Although Plaintiff also cites various cases in which courts have permitted limited discovery into a board or special litigation committee's independence or good faith, nothing in any of those cases suggests that the plaintiffs in those cases were permitted discovery without first pleading

---

[5] Many of the other cases Plaintiff cites are based on the Delaware Supreme Court's decision in *Zapata Corp. v. Maldonado*, 430 A.2d 779, 786 (Del. 1981), which applied a heightened standard of review where demand was rejected by a "special litigation committee" appointed by an interested board (thereby creating a need for additional discovery). These decisions are inapposite for two reasons. First, Massachusetts has expressly rejected the *Zapata* approach. *See* Mass. Gen. Laws ch. 156D, § 7.44 cmt. 2 ("Section 7.44 adopts neither of the so-called New York or Delaware approaches to judicial scrutiny of the decisions of special litigation committees or other decision-makers."). Second, unlike the situation in the *Zapata* line of cases, Plaintiff has not pled facts to suggest that a majority of the Board was not disinterested as a matter of law. The Massachusetts Supreme Judicial Court has expressly held that heightened scrutiny is only appropriate where the majority of the Board is not independent. *Harhen*, 730 N.E.2d at 867. Here, Massachusetts law mandates that the Court treat the disinterested Trustees as independent. Mass. Gen. Laws ch. 182, § 2B.

4

particular facts to support their claim that demand was wrongfully refused.[6] Moreover, in none of these cases did state substantive law restrict the availability of discovery, as Massachusetts law does. Even if limited discovery may be appropriate in some "demand refused" cases, Plaintiff has not shown that it is necessary or appropriate here.[7]

**II.  Claims II and III Must Be Dismissed.**

    **A.  Echo Voting Is Lawful, and the Proxy Statement Did Not Misrepresent or Omit Any Material Facts Regarding Its Use.**

The centerpiece of Plaintiff's defense of Claims II and III is his argument (Opp. at 2, 20-22) that the SEC and NYSE told the Independent Trustees that echo voting was unlawful, and that the Independent Trustees failed to disclose that in the Proxy Statement.[8] To this end, Plaintiff mischaracterizes the law, the regulators' position, and the Proxy Statement's disclosure. The Proxy Statement was accurate and did not misrepresent or omit any material information.

Plaintiff's argument is based on the minutes of a Board meeting held on September 2, 2006, which was an exhibit to the Committee's report. Those minutes state that the SEC and NYSE "had both ruled that the Legg Transaction was a 'non-routine event', and as such, *brokers* would not be able to cast shareholder votes (for or against the proposed transaction) on behalf of

---

[6]  Contrary to Plaintiff's assertion (Opp. at 12, 13), the Second Circuit did not hold that discovery was necessarily required in either *Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) or *Joy v. North*, 692 F.2d 880 (2d Cir. 1982). Rather, it merely noted that the district judges in those cases had permitted discovery. The same is true of the Sixth Circuit's decision in *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). None of the various district court cases cited by Plaintiff holds that discovery is required prior to dismissal of a complaint.

[7]  Plaintiff also argues (Opp. at 18) that discovery is appropriate because the Independent Trustees are "attempting to cover up" facts regarding the SEC and NYSE's position on echo voting, and speculates that discovery will result in "more skeletons tumbling from defendants' proverbial closets." As discussed below, Plaintiff's allegations of a cover-up are baseless on their face. Here, as in *Stoner*, "the pleadings provide no basis for speculating that something might be caught on a fishing expedition," 772 F. Supp. at 800 (citations and internal punctuation omitted).

[8]  Plaintiff also suggests (Opp. at 2) that the Independent Trustees personally engaged in echo voting. Plaintiff makes no such allegation in the Complaint, nor could he, since it is the broker dealers and service agents, not the Independent Trustees, who hold the Fund's shares. In any case, the Independent Trustees could not control how broker-dealers and service agents actually voted. Their job was simply to accurately describe in the Proxy Statement how the voting system was supposed to work.

5

clients who fail to provide voting instructions." Opp., Quitt Decl. Ex E, at 3 (emphasis added). This statement refers specifically to broker-dealers, and only to broker-dealers. Indeed, in context the statement is limited to broker-dealers who are members of the NYSE and says nothing about the lawfulness of echo voting outside the NYSE member firm context.

The basis for the statement in the minutes is an interpretation of NYSE Rule 452, which bars NYSE member broker-dealers from voting shares held in their name without instructions from the beneficial owner with respect to certain non-routine matters – specifically, "any . . . matter which may affect substantially the rights or privileges of [the] stock."[9] Without addressing echo voting itself, both the SEC staff and the NYSE have recently taken the position that approval of an investment company's advisory contract by shareholders, as occurred in connection with the Citigroup-Legg Mason transaction, is a non-routine event. *See* Opp., Quitt Decl. Ex. D. This interpretation of Rule 452 effectively prevents NYSE member broker-dealers from echo voting shares in connection with such a matter. However, NYSE Rule 452 obviously does not apply to any person that is not an NYSE member broker-dealer.

Echo voting by record owners who are not NYSE broker-dealers is both lawful and appropriate, and Plaintiff does not cite a single statute, rule, regulation, case or other authority under either federal or Massachusetts law that provides otherwise. The SEC has never suggested that echo voting is improper. As we have explained (Opening Mem. at 27-28), the SEC actually requires echo voting in some circumstances and recognizes its widespread use elsewhere.

Plaintiff's argument thus blurs the distinction between (i) record owners that are NYSE member broker-dealers, which are subject to NYSE Rule 452 and therefore did *not* echo vote, and (ii) non-broker service agents, such as banks, which are not governed by NYSE Rule 452

---

[9] NYSE Rule 452 is reprinted in the Regulatory Addendum attached to this Reply Memorandum.

6

and which did echo vote.[10] The Proxy Statement accurately described this dichotomy. It did not misrepresent or conceal the effect of NYSE Rule 452 in any respect. Indeed, it expressly and accurately disclosed that the NYSE "has taken the position that *broker-dealers that are members of the NYSE and that have not received instructions from a customer . . . may not vote such customer's shares.*" Finn Decl. Ex. D (Proxy Statement), at 26 (emphasis added). This is exactly what the statement in the September 2 minutes says. The Proxy Statement also made clear that echo voting would occur only with respect to "shares for which a Citigroup-affiliated *service agent* (*other than a broker-dealer*) is the holder of record." *Id.* (emphasis added). The Proxy Statement was not required to say that echo voting in this context is unlawful because, as we have shown, it is not.

### B. Plaintiff Cannot Refute that Claims II and III Are Derivative.

Plaintiff argues (Opp. at 18-24) that Claims II and III assert causes of action premised on interference with a shareholder's voting rights and therefore are direct rather than derivative. But examination of the Complaint reveals that Plaintiff has not alleged any interference with his voting rights. To interfere with voting rights so as to give rise to a direct claim, a defendant would have to take some action that reduces or dilutes the shareholder's voting power. For example, in *Gentile v. Rosette*, 906 A.2d 91 (Del. 2006), the court found a direct claim where a company's CEO received a block of stock in a self-dealing transaction, thereby increasing his own voting power and reducing the voting power of minority shareholders' interest. No such dilution of voting power occurred here. As previously explained (Opening Mem. at 3-4, 21), and as the Proxy Statement makes plain, each shareholder had an unfettered right to vote for or

---

[10] Plaintiff does not and cannot allege that his shares were held by a NYSE member broker-dealer, nor that any NYSE member broker-dealer echo voted shares.

7

against contract approval, or to abstain. Second, as we have also explained (Opening Mem. at 18-20), the only compensable injury that Plaintiff alleges is to the Trust, not to himself.

Plaintiff also argues (Opp. at 20) that a misrepresentation claim is direct, citing *Blasberg v. Oxbow Power Corp.*, 934 F. Supp. 21 (D. Mass. 1996). *Blasberg* is inapposite, however, since it holds that "if a plaintiff alleges that she, as an individual investor, was misled or defrauded in the *purchase* of her investment, this kind of claim is a 'direct' one." 934 F. Supp. at 26 (emphasis added).[11] In contrast, misrepresentation in a proxy statement, as Plaintiff alleges here, gives rise to a derivative claim.[12] Here, Plaintiff does not allege here that he was misled in purchasing shares, and his claim is therefore derivative.

### C. A Private Right of Action Cannot Be Created By Regulation Where It Is Not Created By Statute.

In opposing our argument that there is no private right of action under § 20(a) of the ICA, Plaintiff argues (Opp. at 26-27) that § 20(a) is a "unique 'pass through' statute" because the regulations promulgated by the SEC under the statute (Rule 20a-1) adopt by reference the Commission's other regulations under § 14(a) of the Securities Exchange Act. Plaintiff does not even mention *Alexander v. Sandoval*, 532 U.S. 275 (2001), or *Olmsted v. Pruco Life Insurance*

---

[11] The other cases that Plaintiff relies on apply the same principle. For example, in *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000), plaintiffs bought shares in a fund, then sold them at a loss, which they claimed was a result of the fund having made short sales in violation of restrictions set forth in its registration statement. *Id.* at 680. The plaintiff's investment loss was an individual injury, not an injury to the fund as a whole. Similarly, in the portion of *In re Eaton Vance Mutual Funds Fee Litigation*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005), cited by Plaintiff (Opp. at 20), the court held that where the plaintiffs alleged that they "continued to invest" in a fund based on the defendants alleged misrepresentations and omissions, they stated a direct claim. 380 F. Supp. 2d at 235 n.5. As discussed in our opening memorandum (at 19), the *Eaton Vance* court held that numerous other claims asserted as direct claims were in fact derivative. 380 F. Supp. 2d at 233-36. Here, however, Plaintiff does not assert that he bought or sold shares in reliance on the Proxy Statement or that he suffered any other kind of individual investment loss.

[12] Plaintiff does not dispute that his claim is identical to that in *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991), where the plaintiff filed a derivative action alleging that shareholder approval of an advisory contract was obtained through a misleading proxy statement. Plaintiff argues (Opp. at 22 n.9), however, that the Supreme Court in *Kamen* did not hold that the claim was properly brought in derivative form. In fact, the Supreme Court did not need to reach that issue, since all parties tellingly assumed without question that the claim was derivative, not direct.

8

*Co.*, 283 F.3d 429 (2d Cir. 2002), which are the controlling authorities on the question of whether a federal statute creates a private right of action.

*Sandoval* squarely refutes Plaintiff's argument. The Supreme Court held in that case that that "private rights of action to enforce federal law must be created by Congress" and hence cannot be created by agency regulation. 532 U.S. at 286. As the Court explained:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. . . . Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress.

*Id.* at 291. Here, nothing in the text of the ICA indicates that Congress intended a private right of action to enforce § 20(a). Since Congress did not create a private right of action by statute, the SEC cannot create one by regulation.

### D. Plaintiff Cannot Distinguish Controlling Second Circuit Precedent that Requires Claims II and III to Comply With Rule 9(b).

Plaintiff argues (Opp. at 25) that Claims II and III are not subject to Rule 9(b)'s particularity requirement because "[f]raud is not an element of either claim." *Rombach v. Chang*, 355 F.2d 164 (2d Cir. 2004), refutes Plaintiff's argument. *Rombach* addressed claims under Sections 11 and 12(a)(2) of the Securities Act. The Second Circuit held that although "[f]raud is not an element or a requisite to a claim" under either section, such claims "may be – and often are – predicated on fraud." *Id.* at 171. The court held that where the complaint alleges that statements are materially false or misleading – language "classically associated with fraud" – it sounds in fraud and must comply with Rule 9(b). *Id.* at 172. Here, Plaintiff alleges in Claims II and III that the Trustees made false and misleading statements. Under Rule 9(b) and *Rombach*, those claims must therefore be pled with particularity. Plaintiff has failed to do so.

9

**E.    Plaintiff Cannot Distinguish Case Law that Makes Clear He Lacks Standing to Assert Claims on Behalf of Shareholders of Funds in Which He Does Not Own Shares.**

Plaintiff appears to concede – as he must – that he cannot assert a derivative claim on behalf of Funds in which he is not a shareholder. Plaintiff argues (Opp. at 28-29), however, that he may assert direct claims on behalf of the shareholders of each of the six Funds that comprise the Trust, even though he is a shareholder in only one of those Funds. Contrary to Plaintiff's assertion, *Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005), is squarely on point and refutes this argument.

## CONCLUSION

For the foregoing reasons, as well as those set forth in our opening memorandum, the Complaint should be dismissed.

Respectfully submitted,

James S. Dittmar (*pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
53 State St.
Boston, MA 02109
Tel: (617) 570-1000
Fax: (617) 523-1231

s/ Matthew M. Hoffman
Michael K. Isenman  (*pro hac vice*)
Matthew M. Hoffman  (MH-2668)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC 20001
Tel: (202) 346-4000
Fax: (202) 346-4444

                                  Jeffrey A. Simes (JS-7060)
                                  GOODWIN PROCTER LLP
                                  599 Lexington Avenue
                                  New York, NY 10022
                                  Tel: (212) 813-8800
                                  Fax: (212) 355-3333

                                  *Attorney for Defendants and for Nominal Defendant*
                                  *CitiFunds Trust III*

Dated: December 22, 2006

REGULATORY ADDENDUM

NEW YORK STOCK EXCHANGE RULE 452

**Rule 452. Giving Proxies by Member Organization**

A member organization shall give or authorize the giving of a proxy for stock registered in its name, or in the name of its nominee, at the direction of the beneficial owner. If the stock is not in the control or possession of the member organization, satisfactory proof of the beneficial ownership as of the record date may be required.

**Voting member organization holdings as executor, etc.**

A member organization may give or authorize the giving of a proxy to vote any stock registered in its name, or in the name of its nominee, if such member organization holds such stock as executor, administrator, guardian, trustee, or in a similar representative or fiduciary capacity with authority to vote.

**Voting procedure without instructions**

A member organization which has transmitted proxy soliciting material to the beneficial owner of stock or to an investment adviser, registered either under the Investment Advisers Act of 1940 or under the laws of a state, who exercises investment discretion pursuant to an advisory contract for the beneficial owner and has been designated in writing by the beneficial owner of such stock (hereinafter "designated investment adviser") to receive soliciting material in lieu of the beneficial owner and solicited voting instructions in accordance with the provisions of Rule 451, and which has not received instructions from the beneficial owner or from the beneficial owner's designated investment adviser by the date specified in the statement accompanying such material, may give or authorize the giving of a proxy to voted such stock, provided the person in the member organization giving or authorizing the giving of the proxy has no knowledge of any contest as to the action to be taken at the meeting and provided such action is adequately disclosed to stockholders and does not include authorization for a merger, consolidation or any other matter which may affect substantially the rights or privileges of such stock.

**Instructions on stock in names of other member organizations**

A member organization which has in its possession or control stock registered in the name of another member organization, and which has solicited voting instructions in accordance with the provisions of Rule 451(b)(1), shall

(1) Forward to the second member organization any voting instructions received from the beneficial owner, or

(2) if the proxy-soliciting material has been transmitted to the beneficial owner of the stock in accordance with Rule 451 and no instructions have been received by the date specified in the statement accompanying such material, notify the second member organization of such fact in

order that such member organization may give the proxy as provided in the third paragraph of this rule.

**Signed proxies for stock in names of other member organizations**

A member organization which has in its possession or control stock registered in the name of another member organization, and which desires to transmit signed proxies pursuant to the provisions of Rule 451(b)(2), shall obtain the requisite number of signed proxies from such holder of record.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2006, I caused the foregoing Reply Memorandum in Support of Defendants' Motion to Dismiss Complaint to be served and filed by electronic means, via the Court's CM/ECF system, in accordance with the procedures promulgated by the Court.  The docket sheet indicates that all counsel who have appeared in this case are registered to receive service by electronic means.

s/ Matthew M. Hoffman