CASE #: 1:06-cv-04099-NRB

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 09, 2011

07-3750-cv
Halebian v. Berv

1        UNITED STATES COURT OF APPEALS

2           FOR THE SECOND CIRCUIT

3              August Term, 2010

4          (Argued:  February 5, 2009

5      Question Certified:  December 29, 2009

6    Certified Question Answered:  August 23, 2010

7            Decided:  May 6, 2011)

8            Docket No. 07-3750-cv

9    --------------------------------------

10              JOHN HALEBIAN,

11            Plaintiff-Appellant,

12                 - v -

13   ELLIOT J. BERV, DONALD M. CARLTON, A. BENTON COCANOUGHER, MARK T.
14     FINN, STEPHEN RANDOLPH GROSS, DIANA R. HARRINGTON, SUSAN B.
15        KERLEY, ALAN G. MERTEN, R. RICHARDSON PETTIT,

16            Defendants-Appellees,

17            CITIFUNDS TRUST III,

18       Nominal Defendant-Appellee.[*]

19   --------------------------------------

20   Before:   SACK and PARKER, Circuit Judges, and STANCEU, Judge.[**]

21           Appeal from a judgment of the United States District

22   Court for the Southern District of New York (Naomi Reice

23   Buchwald, Judge) dismissing a three-count complaint arising from

_____

[*] The Clerk of Court is directed to amend the official
caption as set forth above.

[**] The Honorable Timothy C. Stanceu, of the United States
Court of International Trade, sitting by designation.

CERTIFIED COPY ISSUED ON 05/06/2011

UNITED STATES COURT OF APPEALS
FILED
MAY 0 6 2011
Catherine O'Hagan Wolfe, CLERK
SECOND CIRCUIT

the renegotiation of certain investment-advisory agreements.  We
certified a question to the Supreme Judicial Court of
Massachusetts as to the circumstances under which that State's
business judgment rule may be asserted in response to a
shareholder derivative suit under the Massachusetts Business
Corporation Act.  Upon receipt of the answer, we affirm the
district court's dismissal of two of the plaintiff's claims
brought pursuant to various provisions of the Investment Company
Act, 15 U.S.C. §§ 80a-15(a) & 80a-20(a), and Massachusetts state
law.  Regarding the third claim — a derivative state-law claim
for breach of fiduciary duty to which the certified question
related and as to which the district court granted a motion to
dismiss — we vacate the district court's judgment and remand with
instructions to the court to convert the motion to dismiss to a
motion for summary judgment, and to rule on that motion, after
further discovery should the court in the sound exercise of its
discretion determine that such further discovery is warranted.

Affirmed in part; vacated and remanded in part.

JOEL C. FEFFER (Daniella Quitt, James G.
Flynn, on the brief), Harwood Feffer
LLP, New York, NY, for
Plaintiff-Appellant.

JAMES S. DITTMAR, Goodwin Procter LLP,
Boston, MA (Michael K. Isenman, Matthew
M. Hoffman, Goodwin Procter LLP,
Washington, DC, on the brief), for
Defendants-Appellees.

1    SACK, Circuit Judge:

2            Descriptions of the facts underlying this appeal have

3    now been published in three different reported decisions — in the

4    opinion of the United States District Court for the Southern

5    District of New York, Halebian v. Berv ("Halebian I"), 631 F.

6    Supp. 2d 284, 287-91 (S.D.N.Y. 2007); in this Court's previous

7    opinion certifying a question of state law to the Supreme

8    Judicial Court of Massachusetts, Halebian v. Berv ("Halebian

9    II"), 590 F.3d 195, 199-203 (2d Cir. 2009); and in the opinion of

10   the Supreme Judicial Court answering our question on

11   certification, Halebian v. Berv ("Halebian III"), 457 Mass. 620,

12   621-24, 931 N.E.2d 986, 987-89 (2010).  We see no need to

13   reiterate them here except insofar as we think it necessary to an

14   understanding of our resolution of the narrow issues remaining

15   before us.

16                              **BACKGROUND**

17           Halebian's Complaint

18           On May 30, 2006, John Halebian, a holder of shares in

19   one of six separate investment funds (the "Funds") within

20   CitiFunds Trust III (the "Trust"), a Massachusetts business

21   trust, filed a complaint raising three claims in the United

22   States District Court for the Southern District of New York

23   against members of the Trust's board of trustees (the "Board").

24   The suit arose in connection with the June 23, 2005 corporate

25   sale (the "Transaction") of investment-adviser subsidiary

                                    3

1   companies that advised the six Funds.  Pursuant to the

2   Transaction, Citigroup, Inc., which owned the adviser

3   subsidiaries, sold substantially all of its asset-management

4   business to Legg Mason, Inc., automatically terminating, under

5   federal law, the Funds' existing investment-advisory contracts.

6   Following the sale and contract termination, the Trust's Board

7   approved new investment-advisory agreements (the "New

8   Agreements") between the Trust and Legg Mason and then issued a

9   proxy statement to Trust shareholders recommending that they vote

10  to approve the New Agreements.

11          In his complaint, Halebian challenges two principal

12  aspects of the Transaction.  First, he questions the New

13  Agreements' authorization of the payment of "soft dollars," which

14  permitted Legg Mason to hire broker-dealers that also perform

15  research services — a combination that often results in higher

16  commissions for the chosen broker-dealer than those paid to

17  standard broker-dealers.  Second, he challenges shareholder

18  voting procedures permitting "echo voting," which in this case

19  allows Citigroup-affiliated service agents, as record holders of

20  certain shares of the Funds, to vote their total number of shares

21  in proportion to the votes they received from the shares'

22  beneficial owners, even if the service agents had not received

23  voting instructions from all of their customers.  Halebian

24  asserts, in sum, that the "defendants . . . failed to avail

25  themselves of the opportunity to negotiate lower fees or seek

competing bids from other qualified investment advisers" and
"utterly ignored their obligations of loyalty and good faith to
CitiTrust and its beneficiaries."  Complaint ¶¶ 35, 40, Halebian
v. Berv, No. 06 Civ. 4099 (S.D.N.Y. May 30, 2006).

     Halebian's Claim One, presented as a derivative claim
on behalf of the Trust, alleges that the defendants breached
their fiduciary duties to the Trust "in considering the . . .
[T]ransaction and in recommending the new advisory agreements."
Id. ¶ 54.  Claims Two and Three, styled as direct claims, allege
that the defendants violated federal and state law by issuing
materially false and misleading statements and by omitting
material information from the proxy statement as part of an
effort to induce their shareholders to approve the Trust's New
Agreements with Legg Mason.  Id. ¶¶ 60-61, 64-65.

     The Defendants' Motion to Dismiss

     On October 24, 2006, the defendants' counsel moved to
dismiss Halebian's complaint pursuant to, inter alia, Federal
Rule of Civil Procedure 12(b)(6).  Regarding Claims Two and
Three, the defendants asserted that Federal Rules 12(b)(6) and
23.1, and various provisions of the Investment Company Act (the
"ICA"), 15 U.S.C. §§ 80a-15(a) & 80a-20(a), required dismissal of
the two claims because these claims were derivative in nature,
not direct, and as such failed as a matter of law.  Specifically
addressing their requested dismissal of Claim One, the defendants
relied in part on a then-recently enacted provision of

1    Massachusetts law codifying the business-judgment rule permitting

2    a corporation's directors to move to dismiss a derivative lawsuit

3    as to the prosecution of which the leadership concluded would not

4    be in the corporation's best interest.[1]  See Mass. Gen Laws ch.

5    156D, § 7.44(a).

6                    Our Prior Panel Opinion

7              In Halebian II, we agreed with the defendants and the

8    district court, classifying the second and third claims asserted

9    in the plaintiff's complaint as derivative by looking to

10   Massachusetts law, which all agree is applicable.  Halebian II,

11   590 F.3d at 210.  We saw the gravamen of the second and third

12   claims as Halebian's challenge to the use of echo voting.  We

13   then reasoned:

14                    There is no indication that the alleged
15                    unlawfulness of echo voting under section
16                    15(a) of the ICA or Massachusetts law was
17                    called to the attention of the Board by
18                    Halebian or anyone else prior to the
19                    institution of this lawsuit.  And the Board
20                    has consistently and strenuously denied that
21                    echo voting violates these laws.  Since the
22                    Board was apparently not of the view, nor had
23                    it been told, that using a Citigroup-
24                    affiliated service agent other than a
25                    broker-dealer to echo vote shares violated
26                    the ICA or Massachusetts law, or indeed any
27                    law, its failure to inform shareholders to

---

[1] The nominal defendant in this action is a business trust,
not a corporation.  However, as the Supreme Judicial Court
explained, "[b]ecause a business trust in practical effect is in
many respects similar to a corporation, the statute regulating
derivative actions applies to a shareholder bringing such a claim
against a corporation or a business trust."  Halebian III, 457
Mass. at 623 n.4, 931 N.E.2d at 988 n.4 (citation and internal
quotation marks omitted).

1                      the contrary does not appear to us to have
2                      been potentially false and misleading so as
3                      to be cognizable under Massachusetts or
4                      federal law.

5 _Id._ (footnotes omitted).  We thus expressed our inclination to

6 affirm the judgment of the district court (Naomi Reice Buchwald,

7 _Judge_) dismissing Halebian's second and third claims, but

8 declined to resolve them at that time.  We reserved decision on

9 those claims so that we could consider any commentary or analysis

10 that the Supreme Judicial Court of Massachusetts might offer in

11 answering our certified question regarding Halebian's first

12 claim.  _Id._

13         As to Halebian's undisputedly derivative first claim,

14 which alleges a breach of fiduciary duty for failure to

15 investigate alternatives to the New Agreements between the Trust

16 and Legg Mason, we first rejected the district court's reliance

17 on Federal Rule of Civil Procedure 23.1 in dismissing the claim.

18 We were of the view that Halebian's complaint satisfied this

19 federal pleading rule for derivative claims and, accordingly,

20 that the claim thus "stands or falls on whether it was properly

21 dismissed pursuant to Massachusetts substantive law." _Id._ at

22 211.  On the state-law question, the district court had ruled

23 that despite language in the state derivative-suit dismissal

24 provision indicating that it applies only to derivative

25 proceedings "commenced _after_ the rejection of a demand," Mass.

26 Gen. Laws ch. 156D, § 7.44(a) (emphasis added), the defendants

27 could rely on the provision irrespective of the fact that the

7

1  plaintiff had filed suit <u>before</u> the Board's rejection of the

2  demand, provided they rejected the plaintiff's demand "after a

3  good faith review." <u>Halebian I</u>, 631 F. Supp. 2d at 294.

4       Proffering an alternative reading,[2] but "declin[ing] to

5  resolve [the issue] in the first instance," <u>Halebian II</u>, 590 F.3d

6  at 210, we certified to the Supreme Judicial Court of

7  Massachusetts the following question:  "Under Massachusetts law,

8  can the business judgment rule, established under Mass. Gen. Laws

9  ch. 156D, § 7.44, be applied to dismiss a derivative complaint

10 filed timely under section 7.42 but prior to a corporation's

_____

[2] In our previous opinion, we expressed skepticism about the
district court's approach and conclusion, first noting that "it
is a well-established principle of Massachusetts law that when
'the language of the statute is clear, we must enforce it
according to its own terms.'"  <u>Halebian II</u>, 590 F.3d at 212
(quoting <u>Town of Milford v. Boyd</u>, 434 Mass. 754, 757-58, 752
N.E.2d 732, 735 (2001)) (internal quotation marks omitted in
original).  Though we recognized that "context matters," we were
"unconvinced that the statutory context required the district
court to take the path that it did." <u>Id.</u> at 212-13.  In light of
commentary in the legislative record that "clearly anticipates
that in <u>some</u> instances, a corporation might require more than
ninety days to investigate and respond to the shareholder's
demand," we conceded that section 7.44 might apply to some
instances in which a suit was filed before a board's demand
rejection.  <u>Id.</u> at 213 (emphasis in original).  But we concluded
that if section 7.44 applied to <u>all</u> such instances, the need for
a stay — allowable by petition under section 7.43 of the statute
— would be nil.  <u>Id.</u>  We thus reasoned that the proper reading of
the statute as a whole might be that section "7.44 applies to
timely derivative actions filed before the rejection of the
demand that serves as the basis for the action not in all
circumstances, as the district court's ruling suggests, but only
when such an action was actually stayed in accordance with
section 7.43." <u>Id.</u>  We found this reading to be consistent with
statutory commentary and, as a matter of policy, that it would
not impose "an unfair hardship on Massachusetts corporations."
<u>Id.</u> at 213-14.

1  rejection of the demand that serves as the basis for the suit?"[3]

2  Id. at 214.

3                    Supreme Judicial Court's Response

4           On August 23, 2010, the Supreme Judicial Court issued

5  an opinion answering our certified question in the affirmative.

6  Halebian III, 457 Mass. at 621, 931 N.E.2d at 987.  The court

7  reasoned, inter alia:

         If we were to adopt the plaintiff's assertion
         that the Legislature's inclusion of the
         phrase, "commenced after rejection of a
         demand," was intended to deny a corporation
         the benefit of the business judgment doctrine
         where it failed to reject a shareholder's
         demand before the filing of a derivative
         complaint, we would be giving § 7.44 an
         interpretation that would be in direct
         conflict with other language in the same
         section and that would be inconsistent with
         the statutory scheme embodied in the Act and
         reflected in the commentary of its drafters.
         For these reasons, despite the statute's
         unfortunate inclusion of a phrase that, when
         read in isolation, would suggest that
         § 7.44(a) was intended to limit dismissals
         under the business judgment doctrine to
         derivative proceedings "commenced after
         rejection of a demand," we conclude that the
         Legislature did not intend such a limitation.
         Rather, we conclude that the Legislature
         intended that a derivative action must be
         dismissed under § 7.44 following a
         corporation's independent determination, made
         in good faith and after reasonable inquiry,
         that maintenance of the derivative proceeding
         is not in the best interests of the

_____

         [3] We added, as is our practice, that "[t]he certified
question may be deemed to cover any pertinent further issues of
Massachusetts law that the Supreme Judicial Court thinks is
appropriate and advisable to address, including" the issues
presented by Halebian's second and third claims discussed earlier
in the opinion.  Halebian II, 590 F.3d at 215.

                                9

1     corporation, regardless whether the
2     derivative complaint has been filed before or
3     after the corporation's rejection of the
4     shareholder's demand.

5   Id. at 632-33, 931 N.E.2d at 995.

6      We now resolve the instant appeal in light of the

7   careful opinion of the Supreme Judicial Court of Massachusetts in

8   response to our certified question.

9                  **DISCUSSION**

10     I. Claims Two and Three

11     Because the Supreme Judicial Court said nothing in

12   Halebian III that affects our analysis of Halebian's second and

13   third claims as set forth in Halebian II, we affirm the judgment

14   of the district court dismissing those claims for the reasons set

15   forth in our prior opinion.  See Halebian II, 590 F.3d at 207-10.

16     II. Claim One

17     The Supreme Judicial Court, in agreement with the

18   district court in this case, ruled that a defendant in a

19   derivative suit governed by Massachusetts Law may employ the

20   business judgment rule, codified at Mass. Gen. Laws ch. 156D,

21   § 7.44, to dismiss a shareholder complaint that is filed prior to

22   a corporation's rejection of the demand that serves as the basis

23   for the suit.  Halebian III, 457 Mass. at 621, 931 N.E.2d at 987.

24   It does not follow, however, that we can affirm the district

25   court's judgment in its present form.

26   A.  Operation of Section 7.44

As stated by the Supreme Judicial Court, the business judgment rule embodied in section 7.44 "protects a corporation's decision that prosecution of [a] claim demanded by [a] shareholder is not in the best interests of the corporation where the decision is made in good faith by independent decision makers after reasonable inquiry."[4]   Id. at 627 n.11, 931 N.E.2d at 991 n.11.  As applicable to this case after certification, section 7.44 provides that a derivative proceeding commenced either before or after rejection of a demand "shall be dismissed by the court on motion by the corporation if the court finds that . . . a majority vote of independent directors present at a meeting of the board of directors . . . has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the proceeding is not in the best interests of the corporation."  Mass. Gen. Laws ch. 156D, §§ 7.44(a), 7.44(b)(1) (emphases added).  Upon filing its motion to dismiss, the corporation must show by "a written filing with

_____

[4] In a derivative suit, of course, the plaintiff ostensibly brings his or her claims on behalf of the corporation in which he or she owns an interest, against certain corporate leadership. See 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5939.  Inasmuch as it is ordinarily brought because the corporate leadership has declined to assert the claim in issue, however, the corporation is normally treated as a nominal defendant.  See Meyer v. Fleming, 327 U.S. 161, 167 (1946).  But see, e.g., Symes v. Harris, 472 F.3d 754, 761 (10th Cir. 2006) (aligning corporation as plaintiff where corporation was owned entirely by the plaintiffs and "no one within the company . . . would oppose bringing the suit").  It is not the nominal defendant "corporation" which moves to dismiss a derivative suit, but the actual defendants — e.g., board members — that make such a motion.

11

1    the court setting forth facts" that the corporation has

2    established independence, good faith, and the conduct of a

3    reasonable inquiry.  Id. § 7.44(d).  The court "shall" then

4    "dismiss the suit unless the plaintiff has alleged with

5    particularity facts . . . in its complaint or an amended

6    complaint or in a written filing to the court" rebutting the

7    corporation's filing.  Id. (emphasis added).  The statute further

8    provides that if the independence requirement in subsection (a)

9    is met, the plaintiff bears the burden of proving a lack of good

10   faith and reasonable inquiry on the part of the directors; by

11   contrast, if the independence requirement is not satisfied, the

12   corporation must prove that those two elements are present.  Id.

13   § 7.44(e).

14        In ruling on Claim One, the district court adverted to

15   the fact that the plaintiff did not plead or otherwise proffer

16   "any reason why the Board's decision to reject the demand was

17   illegitimate."  Halebian I, 631 F. Supp. 2d at 296.  But we think

18   that relying solely on the failure of the plaintiff to contest

19   the corporation's filing omits a crucial statutory step.  The

20   statute requires a court to "find[]" that various conditions have

21   been satisfied: that the Board is independent, and that it in

22   good faith determined after a reasonable inquiry that the

23   plaintiff's suit was not in the corporation's best interests.

24   Mass. Gen. Laws ch. 156D, § 7.44(d).  The latter component — the

25   existence of a good-faith, reasonable inquiry into the

12

1    corporation's best interests vis-à-vis the plaintiff's suit — is

2    subject to the burden-shifting provisions of subsection (e).  See

3    id. § 7.44(e).  However, that such burden-shifting turns on the

4    independence of the decision maker unambiguously demonstrates

5    that the court's evaluation of independence is a prerequisite to

6    the operation of the dismissal statute in toto.[5]

_____

[5] Further counseling such a conclusion is section 7.44(c),
which sets out various factors, none of which "shall by itself
cause a director to be considered not independent for the
purposes of" section 7.44.  Mass. Gen. Laws ch. 156D, § 7.44(c)
(emphasis added).  We infer little from the inclusion of
subsection (c) apart from that the Massachusetts legislature
intended for the reviewing court to consider other factors in an
evaluation of independence on a motion to dismiss brought under
section 7.44.

We see no such finding of independence in <u>Halebian I</u>.[6]
Though the court's factual summary and legal discussion appear to
<u>assume</u> the Board's independence, <u>see</u> <u>id.</u> at 290, 295-96, the
statute by its own terms requires more, <u>see</u> Mass. Gen. Laws ch.
156D, § 7.44(a).  Supporting this reading of the statutory text,
the Massachusetts Superior Court — in two of only four opinions

_____

[6] We also are not entirely in agreement with the district
court's characterization of the plaintiff's opposition to the
defendants' 12(b)(6) motion.  The court stated that "in opposing
defendants' motion, plaintiff explicitly decline[d] to offer any
reason why the rejection of the demand was illegitimate," and it
expressed "concern[ about the] plaintiff's unwillingness to even
attempt to engage this issue."  <u>Halebian I</u>, 631 F. Supp. 2d at
296 n.8.  However, we view the plaintiff's opposition to the
defendants' motion to dismiss in this case in a different light.

    To be sure, the plaintiff devoted much of his memorandum of
law in opposition to the 12(b)(6) motion to argument for
additional discovery, rather than to a direct refutation of the
defendants' section 7.44 filing.  Pl.'s Mem. in Opp. to Def.'s
Mot. to Dismiss Compl., <u>Halebian v. Berv</u>, No. 06 Civ. 4099
(S.D.N.Y. Dec. 7, 2006).  But the plaintiff made clear that his
goal in seeking additional discovery was precisely to rebut the
Board's assertions.  <u>See, e.g.</u>, <u>id.</u> at 11 (asserting that
defendants are "simultaneously acting as defendants, judge, and
jury"), 12 (arguing that "discovery is necessary to address the
danger of allowing the [Board] to appoint a few 'good ol' boys'
as a special litigation committee [("SLC")] and have legitimate
claims 'whitewashed' through the relative ease of constructing a
record of apparently diligent investigation (internal quotation
marks omitted)), 13 (expressing concern about the "strong
potential for structural bias in" SLCs), 14 (articulating the
"very serious danger that the [Board] . . . would be inherently
biased and fail to investigate plaintiff's allegations against
them and their fellow trustees in good faith").

    Those statements are not factual assertions, and insofar as
the district court rejected their value as such, the court
clearly did not err.  However, in our view, the plaintiff's
opposition here did not constitute an "explicit" refusal or
"unwillingness" to contest the Board's assertions under section
7.44.

of which we are aware to discuss the statute at issue here, three
of which are part of the same lawsuit — determined that in
evaluating a motion to dismiss under section 7.44, the court must
"begin[] with an evaluation of the independence of the" board or
committee charged with responding to a shareholder demand.  Blake
v. Friendly Ice Cream Corp., No. 030003, 2006 WL 1579596, at *14,
2006 Mass. Super. LEXIS 241, at *47 (Super. Ct. Hampden County
May 24, 2006); see also Pinchuck v. State St. Corp., No. 09-2930,
2011 WL 477315, at *11-*13, 2011 Mass. Super. LEXIS 11, at
*29-*36 (Super. Ct. Suffolk County Jan. 19, 2011).  The Blake
court then embarked upon a lengthy consideration of the
corporation's factual submissions purporting to demonstrate the
independence of the members of its special litigation committee
("SLC") as well as the propriety of the committee's formation,
evaluating their sufficiency against Massachusetts law.  See
Blake, 2006 WL 1579596, at *14-*22, 2006 Mass. Super. LEXIS 241,
at *47-*77; see also Pinchuck, 2011 WL 477315, at *11-*13, 2011
Mass. Super. LEXIS 11, at *29-*36 (conducting a factual inquiry
into the independence of the special committee that rejected the
plaintiffs' demand).  Having rejected the SLC's assertion of
independence based on the court's evidentiary review, the Blake
court next assessed the SLC's burden under section 7.44(e) "of
proving that its determination was in good faith and after a
reasonable inquiry upon which its conclusions were based."
Blake, 2006 WL 1579596, at *22, 2006 Mass. Super. LEXIS 241, at

*78; see also Pinchuck, 2011 WL 477315, at *13-*15, 2011 Mass. Super. LEXIS 11, at *36-*42.

In light of the requirement that a deciding court, in ruling on a motion brought under section 7.44 to dismiss a derivative suit, must evaluate the movant's evidentiary submissions to determine whether the corporate entity rejecting a plaintiff's demand is independent, and because the district court did not do so in evaluating the defendants' motion under Federal Rule of Civil Procedure 12(b)(6), we vacate the court's judgment as to Claim One.

B.  Relationship Between Section 7.44 and Rule 12(b)(6)

In Halebian II, we noted that the plaintiff also pressed the argument that even assuming section 7.44 did apply to the facts of this case — a question the Supreme Judicial Court has now settled definitively in the affirmative — the district court erred by failing to convert the Board's motion to dismiss into a motion for summary judgment and in barring the plaintiff from seeking discovery before deciding such a motion.  Halebian II, 590 F.3d at 211 n.13.  We now conclude that, under the circumstances presented here, the dictates of section 7.44 are sufficiently in conflict with the contours of Federal Rule of Civil Procedure 12(b)(6) as to require the district court to complete its evaluation of this matter on remand by converting the defendants' motion to dismiss into one for summary judgment.

As we have noted, section 7.44 sets forth both substantive standards for adjudicating the effectiveness of a board's rejection of a demand <u>and</u> instructions regarding the procedure by which that rejection must be communicated to — and its validity established before — a court.  The dismissal procedure requires a defendant to submit various extrinsic evidentiary materials that the plaintiff may not have referenced or included within his complaint.  <u>See</u> Mass. Gen. Laws ch. 156D, § 7.44(d).

By contrast, the purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted); <u>accord</u> <u>LaBounty v. Adler</u>, 933 F.2d 121, 123 (2d Cir. 1991).  The court therefore does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule. <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008).

On the other hand, of course, on a motion for summary judgment under Federal Rule of Civil Procedure 56, the parties test the substantive merits of the claim or claims and their evidentiary support based on "additional supporting material" in their possession or obtained during discovery.  <u>Chambers v. Time</u>

17

_Warner, Inc._, 282 F.3d 147, 154 (2d Cir. 2002); _see_ _Global Network Commc'ns_, 458 F.3d at 155 (Although Rule 12(b)(6) "assesses the legal feasibility of the complaint, [it] does not weigh the evidence that might be offered to support it."). When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), in order to ensure that the party against whom the motion to dismiss is made may respond. _Cortec Indus., Inc. v. Sum Holding L.P._, 949 F.2d 42, 48 (2d Cir. 1991), _cert. denied_, 503 U.S. 960 (1992).

        The procedure contemplated by section 7.44 of the Massachusetts statute does not easily fit within the constraints of Rule 12(b)(6), even as it has been broadened by occasional judicial glosses on its terms.[7]  While a dismissal pursuant to Rule 12(b)(6) is, at bottom, a declaration that the plaintiff's

---

[7] There are exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint.  For example, it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." _DiFolco v. MSNBC Cable L.L.C._, 622 F.3d 104, 111 (2d Cir. 2010) (citing _Chambers_, 282 F.3d at 153).  Courts may also properly consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." _Chambers_, 282 F.3d at 153 (ellipsis omitted) (quoting _Brass v. Am. Film Techs., Inc._, 987 F.2d 142, 150 (2d Cir. 1993) (dicta)).  In _Chambers_, we noted that "a plaintiff's _reliance_ on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." _Id._ (emphasis in original) (citing _Cortec_, 949 F.2d at 47-48).

1    complaint and incorporated materials are insufficient as a matter

2    of law to support a claim upon which relief may be granted, see

3    Cortec, 949 F.2d at 47, Massachusetts section 7.44 provides a

4    procedure by which a defendant must introduce extraneous material

5    in order to secure dismissal.  The Massachusetts statute "imposes

6    an initial burden on the corporation to come forward with facts

7    to show it is entitled to the section's protection."  Mass. Gen.

8    Laws ch. 156D, § 7.44, cmt. 2.  To avail itself of section 7.44,

9    "the corporation is required . . . to present to the court a

10   filing containing facts justifying application of the business

11   judgment rule."  Id.; see id. § 7.44(d); see also Blake, 2006 WL

12   1579596, at *11, 2006 Mass. Super. LEXIS 241, at *38 (concluding

13   that the party moving to dismiss under section 7.44 has an

14   "initial hurdle of showing that the [board committee which

15   decided to reject the plaintiff's demand] was properly

16   constituted" and also "bears the burden of submitting a written

17   filing with the court setting forth facts to show that a majority

18   of the Board was independent when the independent directors made

19   their determination, and that the independent directors . . .

20   made the determination in good faith after conducting a

21   reasonable inquiry upon which its conclusions are based").

22          According to the statute, then, the corporation first

23   must file its motion to dismiss and "make a written filing with

24   the court setting forth facts to show . . . whether a majority of

25   the board of directors was independent at the time of the

19

1    determination by the independent directors." Id. § 7.44(d).  If,

2    as discussed in Part II(A), above, the trial court determines

3    that the board is independent, the plaintiff bears the burden of

4    demonstrating that the independent directors did not make the

5    determination "in good faith after conducting a reasonable

6    inquiry upon which their conclusions are based."[8] Id. §§

7    7.44(d), 7.44(e).  In this scenario, "the court shall dismiss the

8    suit unless the plaintiff has alleged with particularity facts

9    rebutting the corporation's filing in its complaint or an amended

10   complaint or in a written filing with the court." Id.  Thus the

11   state statute explicitly contemplates an additional opportunity

12   for the plaintiff to rebut — if he or she has not done so in the

13   original complaint — the defendant's factual showings of

14   independence, good faith, and reasonable inquiry, either through

15   an amended complaint or some other "written filing with the

16   court."[9] See Blake, 2006 WL 1579596, at *11, 2006 Mass. Super.

---

[8] If the court concludes the board is not independent, the
burden shifts to the defendant in demonstrating good faith and a
reasonable inquiry.  Id. § 7.44(e).

[9] Section 7.44 permits plaintiffs to dispute by "alleg[ing]
with particularity facts rebutting the corporation's filing" in
three distinct ways: (1) pointing the court back to allegations
made in the plaintiff's initially filed complaint; (2) filing an
amended complaint; and (3) making some other "written filing."
Mass. Gen. Laws ch. 156D, § 7.44(d).  In responding to a
defendant's 12(b)(6) motion to dismiss in federal court, a
plaintiff will generally have the ability to identify allegations
in the complaint, or amend the complaint to add specific
allegations, which call the purported bases for dismissal into
question.  See Fed. R. Civ. P. 15(a)(1)(B), 15(a)(2).  Insofar as
that is the case, section 7.44 would likely not conflict with the
Federal Rules of Civil Procedure.  As, however, the instant case
implicates section 7.44(d)'s third, "written filing" response —

20

LEXIS 241, at *38 ("If the SLC satisfies this burden of setting forth such facts regarding independence and the plaintiff alleges with particularity facts rebutting the SLC's written filing under § 7.44(d), the court assesses the evidence as to whether or not the SLC was independent and whether it determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that maintenance of the derivative proceeding is not in the best interests of the corporation."). Section 7.44(d) also requires that discovery be stayed upon the filing of the motion to dismiss and the required supporting materials until the court rules on the motion, unless a motion for discovery is made and "good cause" shown for "specified discovery." Mass. Gen. Laws ch. 156D, § 7.44(d).

Insofar as the section 7.44 procedure encourages or requires the parties to submit, and under which it is expected that the court will review, evidentiary materials outside the scope of what the plaintiff has already included or incorporated into his or her complaint, the section 7.44 procedure appears to be incompatible with a federal court's limited powers to grant a Rule 12(b)(6) motion to dismiss. Although we cannot foreclose the possibility that there may be cases in which the two regimes

------------------------

and given that, in any event, section 7.44 requires an initial supplementary evidentiary filing by the moving defendant — we still view the two procedural dictates as incompatible, at least on the facts before us here. See also infra note 10 and accompanying text.

1   would not conflict,[10] this is not one of them.  The materials

2   submitted by the defendants to comply with section 7.44 fall

3   outside the bounds of what a federal court may properly consider

4   on a Rule 12(b)(6) motion, and the district court must examine

_____

[10] For example, if a plaintiff files his or her complaint
after the board of directors has already formally rejected the
demand, a federal district court faced with a motion to dismiss
might deem the board's written rejection of the plaintiff's
demand to be incorporated by reference within, or integral to,
the plaintiff's complaint.  That, we surmise, would obviate one
of the potential conflicts between section 7.44 and Rule
12(b)(6).  Moreover, even where a plaintiff files his complaint
before a board's formal rejection of his demand, there might be
cases in which conversion will be unnecessary — for instance, if
a court permits the plaintiff to amend her complaint after the
board's rejection, the court might very well consider the written
rejection to be properly incorporated by reference.  In such a
circumstance, a Rule 12(d) conversion might be unnecessary to a
district court's evaluation of evidence regarding the inquiries
mandated by section 7.44, in light of the policies undergirding
the conversion rule.  See Cortec, 949 F.2d at 48 ("Where
plaintiff has actual notice of all the information in the
movant's papers and has relied upon these documents in framing
the complaint the necessity of translating a Rule 12(b)(6) motion
into one under Rule 56 is largely dissipated.").  Even though we
decline to rule out the possibility that a case of that nature
will eventually arise in this Circuit, we do note that a
conclusion contrary to ours here might be in tension with Circuit
law governing the incorporation of material into a complaint.
See, e.g., Global Network Commc'ns, 458 F.3d at 157 ("In most
instances where th[e 'integral to the complaint'] exception is
recognized, the incorporated material is a contract or other
legal document containing obligations upon which the plaintiff's
complaint stands or falls, but which for some reason . . . was
not attached to the complaint.  The exception thus prevents
plaintiffs from generating complaints invulnerable to Rule
12(b)(6) simply by clever drafting.").

     In this case, though, the district court necessarily relied
on the defendants' extrinsic submissions in granting dismissal to
the defendants.  Although the court was careful to disclaim any
consideration of materials improperly before it on a 12(b)(6)
motion, see Halebian I, 631 F. Supp. 2d at 287 n.1, we conclude
that on the instant facts, the dictates of section 7.44 made such
a task impossible.

1   those materials in order to make the findings mandated by section

2   7.44 as a prerequisite to dismissal.  Because of these unique

3   circumstances, we instruct the district court, on remand, to

4   adjudicate the claim within the framework of summary judgment by

5   converting the defendants' motion to dismiss pursuant to Federal

6   Rule of Civil Procedure 12(d).  See Fagin v. Gilmartin, 432 F.3d

7   276, 285 (3d Cir. 2005) (discussing a New Jersey state procedural

8   rule applicable in shareholder derivative cases and concluding

9   that "it would be better for the [d]istrict [c]ourt to consider

10   [the sufficiency of the board's rejection of a shareholder

11   demand] on summary judgment," rather than on a motion to

12   dismiss).

13   C.  Discovery

14          Although Halebian contended in the district court, and

15   does so again on appeal, that he should have been afforded the

16   opportunity to conduct additional discovery in order to rebut the

17   Board's filing, under both Federal Rule 56 and section 7.44, the

18   availability of further discovery is a matter within the district

19   court's discretion.  Cf. Fagin, 432 F.3d at 285 (noting that the

20   appellate panel remanding to the district court for resolution by

21   summary judgment "d[id] not intrude on the [district c]ourt's

22   discretion as to the extent of discovery it needs to decide the

23   issue").  While we decline to decide the question, the district

24   court may well have acted within its discretion in denying the

25   plaintiff's request for discovery, particularly in light of the

23

1   defendants' submission of "thousands of pages detailing the
2   backgrounds of the directors at issue, as well as the extensive
3   efforts made by the independent counsel in preparing its review
4   of the demand for the committee and the Board." Halebian I, 631
5   F. Supp. 2d at 298.  We nonetheless think that a reevaluation of
6   any such application by the plaintiff for more discovery in light
7   of Rule 56 case law and procedures would be advisable on remand.
8           In rejecting the plaintiffs' discovery request, the
9   district court wrote: "Absent a specific allegation in the
10  complaint as to why the Board was not disinterested, nor why the
11  demand was refused, and absent a specific argument from plaintiff
12  as to what more discovery would yield, we decline to allow
13  plaintiff to avail himself of a premature opening of the
14  floodgates to discovery in an effort to cure the deficiencies in
15  the complaint."[11] Halebian I, 631 F. Supp. 2d at 298.  In
16  addition, the district court suggested that the plaintiff — even
17  though filing his complaint before the Board's rejection — might
18  have anticipated that he would have to make allegations about
19  independence, and therefore could have done so in the original

_____

[11] We note that the various allegations in plaintiff's
opposition to the defendants' motion discussed in note 6, supra,
seem to us to arguably present "a specific argument . . . as to
what more discovery would yield," Halebian I, 631 F. Supp. 2d at
298.  Whether the plaintiff's arguments on that issue are
convincing, though, is a question left to the sound discretion of
the district court on remand.

1  filing.[12]   But we do not see how the plaintiff can be expected

2  to have made "specific allegation[s]" in the complaint as to "why

3  the demand was refused" when the Board had not yet taken final

4  action on the plaintiff's demand at the time his complaint was

5  filed.  And the statute does not require the plaintiff to predict

6  the content of the defendants' submissions on its motion to

7  dismiss and preemptively rebut those submissions in its

8  complaint.

9                          **CONCLUSION**

10        For the foregoing reasons, we affirm the judgment of

11  the district court dismissing Claims Two and Three of the

12  complaint.  We vacate that portion of the district court's

13  judgment dismissing Claim One under Rule 12(b)(6) and remand this

14  matter to the district court for its resolution of Claim One in a

15  manner consistent with this opinion.

---

[12]  The court stated:

> We realize that the complaint could not have
> pled reasons why the Board's decision to
> reject the demand was improper in light of
> the fact that the complaint was filed prior
> to the rejection.  However, the complaint
> could have asserted various reasons as to why
> the Board was constituted of interested
> trustees, or why the [Board's demand review
>                         d, was inadequate as
>                         e Board.
>
> n.8.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit