UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN HALEBIAN,

                Plaintiff,

- against -

ELLIOT J. BERV, et al.,

                Defendants,

- and -

CITIFUNDS TRUST III,

                Nominal Defendant.

Case No. 06-cv-4099 (NRB)
ECF Case

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR LEAVE
TO TAKE DISCOVERY AND TO AMEND THE COMPLAINT**

# TABLE OF CONTENTS

PROCEDURAL BACKGROUND ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.      The Court Should Deny Halebian's Request for Discovery .................................................2

        A.      The Second Circuit's Decision Makes Clear That Halebian Is Not
              Entitled to Discovery as a Matter of Right. .............................................................2

        B.      Halebian Has Not Made the Showing Necessary to Justify
              Discovery Under Rule 56 of the Federal Rules. .......................................................3

        C.      The Policy of the Massachusetts Statute Also Weighs Against
              Discovery. .................................................................................................................6

II.     The Court Should Deny Halebian's Request for Leave to Amend the Complaint. ..............7

        A.      An Amendment Would Be Futile. ............................................................................8

             1.      Claim Preclusion Bars the New Claims. .......................................................8

             2.      The New Claims Are Derivative and Therefore Barred for
                    Failure to Make Demand. ............................................................................11

             3.      The Proposed New Claims Are Meritless. ..................................................13

        B.      The Request for Leave to Amend Comes Too Late. .............................................14

CONCLUSION ..............................................................................................................................16

Defendants, the Independent Trustees of CitiFunds Trust III (collectively, the "Trustees") and CitiFunds Trust III (the "Trust"), submit this memorandum in opposition to the motion of the plaintiff, John Halebian ("Halebian"), for leave to take discovery and to amend the complaint. Despite being afforded ample opportunity, Halebian has failed to articulate any legitimate reason why he should be granted discovery beyond the thousands of pages of documents and the accompanying Mark T. Finn declaration that he already has received. Nor has Halebian provided any justification for amending his complaint now, after this Court has dismissed his claims in their entirety, that dismissal has been affirmed as to the claims he seeks to reinstate, and the action has been remanded to this Court for limited specified purposes. The motion should be denied.

## PROCEDURAL BACKGROUND

Halebian's motion comes with a long procedural history. In 2006, the defendants moved to dismiss the current complaint. This Court granted that motion in its entirety and dismissed the complaint with prejudice. *Halebian v. Berv*, 631 F. Supp. 2d 284, 302 (S.D.N.Y. 2007) ("*Halebian I*"). On appeal, the Second Circuit certified a question of Massachusetts statutory law to the Supreme Judicial Court of Massachusetts. *Halebian v. Berv*, 590 F.3d 195 (2d Cir. 2009) ("*Halebian II*"). The Massachusetts high court confirmed this Court's analysis of the Massachusetts statute. *Halebian v. Berv*, 457 Mass. 620 (2010) ("*Halebian III*"). The Second Circuit then affirmed this Court's judgment dismissing Claims Two and Three and remanded with respect to Claim One only. *Halebian v. Berv*, 644 F.3d 122 (2d Cir. 2011) ("*Halebian IV*").

The Second Circuit's remand was for two specific, and limited, purposes. First, the Second Circuit directed that to dismiss Claim One under the Massachusetts statute, the Court must make express findings with respect to the Trustees' independence, good faith, and

1

reasonable inquiry regarding Halebian's pre-derivative suit demand.  Second, the Second Circuit instructed the Court to determine, in its discretion, whether any discovery is warranted prior to making those findings.

Halebian raises two separate issues in his motion.  He seeks leave to conduct discovery.  Contrary to the Second Circuit's decision in *Halebian IV*, however, he contends that he is entitled to discovery as of right.   He also seeks leave to amend his complaint to reinstate the echo voting claim – something never contemplated by the Second Circuit when it affirmed the dismissal of Claims Two and Three and remanded Claim One.  Both requests should be denied.

## ARGUMENT

**I.     The Court Should Deny Halebian's Request for Discovery.**

Halebian argues (at 3) that, in light of the Second Circuit's decision, he is "entitled" to discovery as a matter of right.  This argument must be rejected for at least three reasons.  First, the Second Circuit made clear that Halebian is not entitled to discovery as a matter of right.  Rather, the decision to grant or deny discovery was left to the sound exercise of this Court's discretion.  Second, Halebian has not shown any reason why the Court should exercise its discretion to permit discovery under the standards of Rule 56.  Third, although Massachusetts law may not be dispositive of the discovery question in this case, the policy of the Massachusetts statute against discovery on the threshold issue of whether a shareholder is entitled to assert a derivative claim strongly weighs against allowing Halebian to take such discovery here.

**A.     The Second Circuit's Decision Makes Clear That Halebian
Is Not Entitled to Discovery as a Matter of Right.**

Halebian's assertion that he is "entitled" to conduct further discovery is directly contrary to the Second Circuit's holding in this case.  The Second Circuit held that "under both Federal Rule 56 and [Mass. Gen. Laws ch. 156D,] section 7.44, the availability of further discovery is a

2

matter within the district court's discretion." *Halebian IV*, 644 F.3d at 133. The court of appeals specifically noted that "the district court may well have acted within its discretion in denying [Halebian's] request for discovery, particularly in light of the defendants' submission of 'thousands of pages detailing the backgrounds of the directors at issue, as well as the extensive efforts made by the independent counsel in preparing its review of the demand for the committee and the Board.'" *Id.* (quoting *Halebian I*, 631 F. Supp. 2d at 298). Thus, the Second Circuit was very clear that Halebian had in effect already received considerable discovery through defendants' submissions and that the question of whether he is entitled to seek further materials is committed to this Court's discretion. Because Halebian's entire argument is premised on the erroneous assertion that he is entitled to discovery as a matter of right, his request for discovery should be denied.

### B. Halebian Has Not Made the Showing Necessary to Justify Discovery Under Rule 56 of the Federal Rules.

In view of the Second Circuit's directive that this Court adjudicate the Trustees' motion to dismiss Claim One within a summary judgment framework, the relevant standards for determining whether Halebian should be permitted discovery are those set forth in Rule 56. Rule 56 does not require that discovery be permitted before a court may decide a summary judgment motion; rather, the rule provides that a motion for summary judgment may be made "at any time" until 30 days after the close of discovery. Fed. R. Civ. P. 56(b). If the non-moving party believes it needs discovery to respond to the motion, the proper procedure is to request discovery under Rule 56(d) (formerly Rule 56(f)), which requires that party to "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). As the Second Circuit has explained, the affidavit must "explain[], among other things, what facts are sought and how they are to be obtained; what efforts the affiant has

3

made to obtain those facts; and why those efforts were unsuccessful." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (citation and internal punctuation omitted). Furthermore, "[e]ven where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." *Id.* (citation and internal quotation marks omitted). "[A] bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (citations and internal punctuation omitted).

The materials submitted by Halebian do not come close to satisfying this standard. Although Halebian has submitted a declaration from his counsel, that declaration does not purport to set forth any specific facts that Halebian expects to discover that might enable him to demonstrate either that the defendant Trustees were not in fact independent and disinterested or that they failed to conduct a reasonable, good-faith inquiry into his demand.

With respect to independence, Halebian continues to completely ignore Mass. Gen. Laws. ch. 182, § 2B, which provides that "[a] trustee of a trust who with respect to the trust is not an interested person, as defined in [the] Investment Company Act of 1940 [(the "ICA")], shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee." Halebian has not pointed to any facts to suggest that any of the Trustees who acted on his demand is "interested" within the meaning of the ICA. *See* 15 U.S.C. § 80a-2(a)(3), (19) (definitions of "affiliated person" and "interested person"). Furthermore, even ignoring the Trustees' statutory independence, Halebian has not identified any factual basis for challenging the Trustees' independence. He merely reiterates the legally erroneous argument that the

4

Trustees cannot be independent because he has accused them of wrongdoing. But Massachusetts law specifically provides that a director cannot be deemed non-independent merely because the director has been named as a defendant in a derivative complaint or approved the act being challenged in such proceeding if the act resulted in no personal benefit to the director. Mass. Gen. Laws ch. 156D, § 7.44(c). In any event, Halebian does not need discovery to make this argument.

With respect to reasonableness and good faith, Halebian's primary argument seems to be that the length of time the Independent Trustees took to review his demand demonstrates a lack of good faith. *See* Proposed Amended Complaint ("Prop. Am. Compl.") ¶ 58(a). This makes no sense. If anything, the length of time expended is indicative of the care and attention that the Independent Trustees devoted to investigating Halebian's demand. Undoubtedly, if the Independent Trustees had simply rejected the demand in a relatively short time, Halebian would have complained that quick action demonstrated a lack of good faith. In any event Halebian also does not need discovery to make this argument.[1]

Instead of specific facts, Halebian simply offers speculation that discovery might yield some basis for a challenge to the Trustees' independence, reasonableness, or good faith that he has not been able to ascertain from the voluminous materials he has already received. But as the Second Circuit has made clear, discovery is intended to enable a party to investigate the facts regarding an existing claim, not to determine whether a claim exists. *See, e.g.*, *Paddington*, 34 F.3d at 1138 ("Econocom's argument is that it should be allowed to find out if it has a claim,

---

[1] Halebian also reiterates his allegations relating to echo voting and the features of the investment advisory agreements relating to statutory permitted "soft-dollar" arrangements. Prop. Am. Compl. ¶ 58(b)-(e). These arguments relate to the merits of Halebian's claims, rather than to the question at issue here, namely, whether the Independent Trustees conducted a reasonable inquiry in good faith.

5

rather than that it has a claim for which it needs additional discovery.  Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure.").

The facts of this case are nearly identical to those of *Stoner v. Walsh,* 772 F. Supp. 790 (S.D.N.Y. 1991), where Judge Mukasey denied a derivative plaintiff's request for discovery into whether his demand had been properly rejected.  There, as here, plaintiff sought broad ranging discovery, including documents examined by the committee that had considered the demand and by its advisers and discovery into the background of the entire board.  *Id.* at 800.  In denying the request, the court noted that there was a presumption that the board's decision was a valid exercise of business judgment and that plaintiff had not pled any facts to rebut that presumption. *Id.*  The court emphasized that "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists," and that "the pleadings provide no basis for speculating that something might be caught on a fishing expedition."  *Id.* (citation and internal punctuation omitted).  Those observations are equally apt here.  Because Halebian has not identified any specific facts bearing on the questions of independence, relevance, or good faith that he seeks to establish through further discovery, beyond the voluminous materials he has already received, his request for such discovery should be denied.

### C. The Policy of the Massachusetts Statute Also Weighs Against Discovery.

Substantive Massachusetts law setting forth the demand requirement and the procedures for dismissal of a derivative action also weigh heavily against Halebian's request for discovery. The Massachusetts Business Corporations Act provides that the filing of a motion to dismiss a derivative suit automatically stays discovery, but that "the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted."  Mass. Gen. Laws

ch. 156D, § 7.44(d). Thus the default rule under Massachusetts law is that discovery is not permitted on the threshold question of whether a shareholder may maintain a derivative action. In order to obtain discovery, a derivative plaintiff must show good cause and specify what discovery is sought.

While the Second Circuit held in this case that the Trustees' motion to dismiss Claim One should be decided within the framework of federal summary judgment procedure, the court of appeals did not suggest that the discovery restrictions set forth in § 7.44(d) of the Massachusetts law were irrelevant. To the contrary, the Second Circuit specifically cited both Rule 56 and § 7.44 as the bases for this Court's discretion over discovery. *Halebian IV*, 644 F.3d at 133. It is clear from the language of the statute that the Massachusetts Legislature intended to limit the availability of discovery on the threshold question of whether a shareholder may maintain a derivative action. In view of plaintiff's failure, after ample opportunity to do so, to show any good cause for his requested discovery, this Court should respect that policy and deny Halebian's request.

## II.     The Court Should Deny Halebian's Request for Leave to Amend the Complaint.

Halebian seeks to amend his complaint in two respects. First, he wishes to add derivative and direct claims for breach of fiduciary duty premised on the Trust's use of the shareholder voting procedure known as echo voting – a subject already raised and disposed of in Counts Two and Three of the current complaint. Second, he seeks to add additional allegations regarding the actions of the Trustees in response to his demand.

The Second Circuit has made clear that "the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court." *Acito v. IMCERA Grp.*, 47 F.3d 47, 55 (2d Cir. 1995). Other than offering the standard observation that ordinarily

7

leave to amend should be freely granted, Halebian fails to articulate any basis for permitting an amendment at this late date, after final judgment has entered as to Claims Two and Three.[2] But under the circumstances here, compelling reasons justify a denial of leave to amend. As a matter of law, the proposed amendment would be futile. Furthermore, it is simply too late. The Second Circuit has remanded only Claim One, and for a limited purpose, not to permit Halebian to start over after five years of litigation and entry of final judgment against him.

### A.     An Amendment Would Be Futile.

It is well settled that leave to amend should be denied as futile if the amended complaint would be dismissed. The Second Circuit has endorsed futility as a "good reason to deny leave to amend." *Acito*, 47 F.3d at 55; *see also Kaye Scholer LLP v. CNA Holdings, Inc.*, 2010 U.S. Dist. LEXIS 43194, at *2 (S.D.N.Y. Apr. 28, 2010) (Buchwald, J.) (denying leave to amend as futile). Here, the proposed amendment would be futile for several independent reasons.

### 1.     Claim Preclusion Bars the New Claims.

The Court already entered judgment on Halebian's claims regarding echo voting, and that judgment has been affirmed on appeal. The proposed new echo voting claims arise from the same nucleus of alleged facts. Accordingly, the doctrine of claim preclusion prevents Halebian from adding those claims now.

---

[2] The cases on which Halebian relies (at 5-6) for the proposition that it would be an abuse of discretion to deny leave to amend are inapposite. For example, in *Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990), the Second Circuit confirmed that "the decision whether to grant leave to amend is within the discretion of the district court," but held that the fact that the district court "did not mention [plaintiff's] offer to amend and gave no reason for denying it" constituted an abuse of discretion. *Id.* at 198. Likewise, in *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court made clear that "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Id.* at 182.

8

Claim preclusion – also known as res judicata – bars a litigant from bringing a new claim that could have been raised before judgment was entered.  As the Second Circuit has explained, "res judicata or claim preclusion prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (citation and internal punctuation omitted).  To determine whether claim preclusion applies, a court must determine whether the new claim "involves the same … nucleus of operative fact." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (citations and internal punctuation omitted).  If the "underlying facts are related in time, space, origin, or motivation," they may be deemed to constitute a single transaction to which claim preclusion applies. *Id.*

Here, there is no dispute that the proposed new claims challenging the use of echo voting involve the same nucleus of operative fact as the original complaint.  Halebian himself concedes (at 6) that "the additional facts and allegations contained in the new pleading are closely related to the original claim, and are foreshadowed in earlier pleadings."  (Internal punctuation omitted.)  In the original complaint, both Claims Two and Three were premised on the allegation that the echo voting procedures were illegal.  As this Court explained in *Halebian I*, "Plaintiff describes Claims [Two] and [Three] as 'two direct causes of action based on the Proxy Statement's description of voting procedures employed by defendants,' a method of voting known as echo voting." *Halebian I*, 631 F. Supp. 2d at 298.  Specifically, Claim Two alleged that the proxy statement included misleading statements and omissions "concerning the described voting procedure's failure to comply with ICA Section 15(a) and Massachusetts law."  Original Complaint ("Orig. Compl.") ¶ 60.  Claim Three alleged that the Trustees "failed to adequately disclose material information concerning the propriety of their voting procedures."  Orig. Compl.

¶ 65.³  The Second Circuit accordingly explained in *Halebian IV* that "[in *Halebian II* w]e saw the gravamen of the second and third claims as Halebian's challenge to the use of echo voting." 644 F.3d at 125.

Moreover, the Court has entered judgment dismissing the two claims that were premised on echo voting, and that judgment was affirmed on appeal.  *See* Dkt. No. 32 (July 31, 2007) (judgment entered on dismissal of the original complaint); *Halebian IV*, 644 F.3d at 133 ("affirm[ing] the judgment of the district court dismissing Claims Two and Three").  That judgment is entitled to claim preclusive effect.  Halebian is barred from now adding new claims based on the same nucleus of facts alleged in those two claims on which judgment has entered.

That Halebian seeks to amend his prior complaint, rather than to bring a new lawsuit, does not alter the claim preclusion analysis.  *Jones v. District of Columbia*, 646 F. Supp. 2d 42 (D.D.C. 2009), is squarely on point.  The district court in *Jones* had granted summary judgment to the defendants on all claims.  The court of appeals affirmed the judgment with respect to some of the counts, but reversed and remanded with respect to one of the counts.  *Id.* at 44.  On remand, the district court held that res judicata applied to the partial judgment that had been affirmed on appeal.  *Id.* at 46; *see also Ernest W. Hahn, Inc. v. Codding*, 1981 WL 2191, at *1 (N.D. Calif. Aug. 17, 1981) (where appellate court had affirmed a judgment in part and remanded, the "argument that the judgment was not 'final,' thus not entitled to *res judicata* effect, is without merit.").

---

³ In contrast, Claim One was not premised on voting procedures.  Rather, Claim I alleged a breach of "the duty to act loyally and with good faith in considering the Citigroup/Legg Mason transaction and in recommending the new advisory agreements."  Orig. Compl. ¶ 54.

10

### 2.     The New Claims Are Derivative and Therefore Barred for Failure to Make Demand.

Although the proposed amended complaint pleads the echo voting claim in the alternative as either derivative or direct, under Massachusetts law those claims are derivative. Halebian made no demand with respect to echo voting. That failure would require the proposed new claim to be dismissed under Massachusetts' universal demand statute.

There is no dispute that Halebian failed to make a demand with respect to his proposed echo voting claims. In fact, when Halebian sent his demand letter to the Trustees, he expressly excluded any claims relating to echo voting, and instead stated that the issue "will not be addressed in this letter." Feb. 8, 2006 Demand Letter (Ex. A hereto), at 1 n.1.[4] Under the Massachusetts universal demand statute, Mass. Gen. Laws ch. 156D, § 7.42, the failure to make a demand is without exception fatal to any derivative claim. *See Halebian I*, 631 F. Supp. 2d at 292-93.

Second, although Halebian attempts to add his echo voting claim alternatively as either a derivative claim (Claim One of the proposed amended complaint) or a direct claim (Claim Two of the proposed amended complaint), it is clear they are derivative in character. In *Halebian I*, this Court provided a detailed analysis to determine whether a claim was derivative or direct:

> Whether a claim is individual or derivative … is determined from the nature of the harm inflicted and the nature of the rights violated. To bring a direct action under Massachusetts law, a plaintiff must allege either an injury which is separate and distinct from that suffered by shareholders generally, or a wrong involving one of his or her contractual rights as a shareholder. *See Sarin v. Ochsner*, 48 Mass. App. Ct. 421, 721

---

[4] The February 8, 2006 Demand Letter is referenced in ¶ 48 of the original complaint and ¶ 51 of the proposed amended complaint. It is likewise undisputed that Halebian never made demand as to the Trustees' actions that he alleged occurred after his initial demand letter. For example, the proposed amended complaint alleges that the Trustees "conceal[ed] their earlier transgressions through the agency of the [Demand Review Committee]", Prop. Am. Compl. ¶ 2, and "seeks to recover, for CitiTrust, damages it has suffered as a result of defendants' bad faith and reckless conduct in … covering up such conduct." *Id.* ¶ 4.

11

> N.E.2d 932, 934-35 (Mass. App. Ct. 2000); *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (relying on *Sarin* while interpreting Massachusetts law).

*Halebian I*, 631 F. Supp. 2d at 301 (footnote omitted). And the Second Circuit concurred:

> In *Halebian II*, we agreed with the defendants and the district court, classifying the second and third claims asserted in the plaintiff's complaint as derivative by looking to Massachusetts law, which all agree is applicable.

*Halebian IV*, 644 F.3d at 125.

Applying that analysis here makes clear the proposed new echo voting claims, like the old ones, are derivative. First, the injury claimed is to the Trust, not to individual shareholders. The proposed amended complaint pleads that "[a]s a result of the breaches of fiduciary duty and wrongful acts of defendants as alleged herein, CitiTrust has suffered substantial damages and has been subjected to significant costs and expenses." Prop. Am. Compl. ¶ 59. And the equitable relief sought – "declaring the new advisory agreements void" – would have a direct impact on the Trust, but only an indirect impact on its shareholders.

Second, the underlying claim does not involve Halebian's contractual right as a shareholder. In *Halebian I*, this Court expressly rejected the argument that "the use of echo voting deprived [Halebian] of a contractual right to vote." 631 F. Supp. 2d at 302. As the Court explained, "the Trust Instrument, which is the source of plaintiff's contractual rights as a shareholder, expressly authorizes the use of the procedure, and shareholders were not denied the opportunity to vote on any proposed new advisory contract." *Id.* (citation omitted). Moreover, the proposed amended complaint does not assert a claim for breach of contract or breach of the Trust Instrument, nor does it identify any provision in the Trust Instrument that has allegedly been violated. Rather, the proposed amended complaint, like the original complaint, alleges that "'echo voting' procedures violate ICA Section 15(a), 15 U.S.C. § 80a-15(a), as well as

12

Massachusetts law." Prop. Am. Compl. ¶ 49.  There is no basis to convert a supposed breach of federal or state law into a breach of a shareholder's contractual rights.

### 3. The Proposed New Claims Are Meritless.

Finally, amending the complaint would be futile because the echo voting claims lack merit.  The proposed amended complaint, like the original complaint, alleges that "'echo voting' procedures violate ICA Section 15(a), 15 U.S.C. § 80a-15(a), as well as Massachusetts law." Prop. Am. Compl. ¶ 49.  But after five years of litigation, Halebian has still not cited a single case or other authority stating that echo voting violates ICA § 15(a), nor has he ever identified any provision of Massachusetts law that prohibits echo voting.

In fact, no federal law proscribes echo voting.  To the contrary, federal statutes and SEC regulations affirmatively require echo voting in some circumstances.[5]  Even where not required, the SEC has recognized, without criticism, that echo voting is commonly used by mutual funds.[6] The SEC certainly has not forbidden echo voting.  Nor does Massachusetts law prohibit echo voting.  As the Court recognized, "the Trust Instrument … expressly authorizes the use of the procedure," *Halebian I*, 631 F. Supp. 2d at 302, and the Massachusetts high court has held that it

---

[5] For example, ICA § 12(d) limits a mutual fund's ownership of other mutual funds except under prescribed circumstances.  15 U.S.C. § 80a-12(d).  Section 12(d)(1)(E) creates a safe harbor, however, if among other things the holding fund owns only shares of the other fund and is "obligated ... either to seek instructions from its security holders with regard to the voting of" the other fund's shares, "or to vote the shares ... in the same proportion as the vote of all other holders" – i.e., to echo vote.  Consistent with ICA § 12(d)(1)(E), SEC regulations require insurance companies that are record owners of mutual fund shares relating to variable annuities and variable life insurance policies to echo-vote those shares.  *See* Rule 6e-2(b)(10)(i)(B) under the ICA, 17 C.F.R. § 270.6e-2(b)(10)(i)(B); Rule 6e-3(T)(b)(10)(i)(B) under the ICA, 17 C.F.R. § 270.6e-3(T)(b)(10)(i)(B).

[6] In 2002 the SEC issued regulations governing the merger of investment companies.  While the SEC determined that it would not require the use of echo voting in such transactions (as it had initially proposed), it acknowledged that "it is a common practice for advisers with conflicting obligations to vote their shares in a manner similar to that which we proposed [i.e., echo voting]." Investment Company Mergers, SEC Release No. IC-25666, 67 Fed. Reg. 48,512, 48,513 n.18, 2002 SEC LEXIS 1837, at *11 n.18 (July 18, 2002).

does not offend public policy for a business trust to follow the voting procedures set forth in the trust instrument.  *See, e.g.*, *Comstock v. Dewey*, 83 N.E.2d 257, 259 (Mass. 1949).

The sole basis proffered by Halebian for the supposed illegality of echo voting is not a federal or state law or regulation, but rather an internal rule of the New York Stock Exchange, NYSE Rule 452.  Under NYSE Rule 452, broker-dealers who were members of the NYSE were not permitted to – and did not – echo vote on the proposals at issue here.  That does not mean that echo voting by *other* entities who are *not* members of the NYSE was improper or unlawful.  As an internal rule, NYSE Rule 452 thus does not prevent Citigroup-affiliated service agents who were *not* NYSE members from employing echo voting procedures.  Rather, the rule applies solely to broker-dealers who *are* NYSE members.  And, Halebian does not and cannot allege that his shares were held or echo voted by an NYSE member.[7]

### B. The Request for Leave to Amend Comes Too Late.

Leave to amend should also be denied because it comes nearly five years after the Trustees moved to dismiss the complaint.  Halebian's proposed amended complaint contains no allegations based on new information.  All of the information relied upon in the proposed amended complaint was available to Halebian either when he filed his initial complaint or, at the very latest, when the Trustees served their motion to dismiss in 2006.

In response to that motion to dismiss, Halebian did not amend his complaint, which he could have done as of right.  Instead, he made the tactical decision to stand on his initial

---

[7] Furthermore, Rule 452 does not regulate echo voting per se, but rather prescribes the circumstances under which NYSE member broker-dealers may or may not vote shares held of record without instructions from the beneficial owner.  Without addressing echo voting itself, both the SEC staff and the NYSE have taken the position that shareholder approval of an investment company's advisory contract is a "non-routine" event, which prevents NYSE member broker-dealers from voting shares in connection with such a matter without instructions from the beneficial owner.

pleading. Now, five years later, and after this Court's decision dismissing his complaint, three appellate court decisions, and final judgment entered on Claims Two and Three, Halebian proposes to start over.

Halebian argues (at 7) that Mass. Gen. Laws ch. 156D, § 7.44(d) "expressly contemplates the filing of an amended complaint based upon a defendants' filing." That mischaracterizes the statute. Section 7.44(d) directs that if a corporation moves to dismiss a derivative action under the statute, a "court *shall* dismiss the suit unless the plaintiff has alleged with particularity facts rebutting the corporation's filing in … an amended complaint *or* in a written filing with the court." (Emphasis added.) The statute thus contemplates that a plaintiff *either* amends the complaint *or* makes a written filing with the court, and then the court determines whether to dismiss the lawsuit. Here, Halebian chose the latter course. As contemplated under the statute, the Court then ruled. The statute does not contemplate that a plaintiff may first make a written submission and then, if the court holds that the derivative action should be dismissed based on the business judgment rule, get a second bite at the apple by amendment.

Permitting an amendment here would be particularly unjust given the unique procedural posture of this case. The Court already dismissed the complaint with prejudice in its entirety. Dismissal of two of the complaint's three claims for relief has been affirmed, and final judgment has entered on those two claims. The Second Circuit "remand[ed] this matter to the district court for its resolution of Claim One in a manner consistent with this opinion." *Halebian IV*, 644 F.3d at 134. In short, the Second Circuit remanded for a very limited purpose – for this Court to make express findings pursuant to the Massachusetts statute, and to determine, within its discretion, whether to permit discovery.

15

To allow piecemeal litigation by permitting an amendment now would result in an obvious waste of judicial and the defendants' resources. If Halebian had amended his complaint before the Court ruled on the motion to dismiss in July 2007, that would have permitted this Court and two appellate courts to address all issues at once. In the meantime, defendants have devoted substantial resources seeking the dismissal of the current complaint, and it is unfair to require them to start over again.

## CONCLUSION

For the foregoing reasons, the motion should be denied.

         Respectfully submitted,

         <u>/s/ Matthew M. Hoffman</u>

         James S. Dittmar (*pro hac vice*)
         GOODWIN PROCTER LLP
         Exchange Place
         53 State Street
         Boston, MA  02109
         Tel: (617) 570-1000
         Fax: (617) 523-1231
         jdittmar@goodwinprocter.com

         Michael K. Isenman (*pro hac vice*)
         Matthew M. Hoffman (MH-2668)
         GOODWIN PROCTER LLP
         901 New York Avenue, NW
         Washington, DC  20001
         Tel: (202) 346-4000
         Fax: (202) 346-4444
         misenman@goodwinprocter.com
         mhoffman@goodwinprocter.com

         Jeffrey A. Simes (JS-7060)
         GOODWIN PROCTER LLP
         The New York Times Building
         620 Eighth Avenue
         New York, NY  10018
         Tel: (212) 813-8800
         Fax: (212) 355-3333
         jsimes@goodwinprocter.com

Dated:  October 27, 2011      *Attorneys for Defendants and for Nominal*
                 *Defendant CitiFunds Trust III*

17